LaROSE, Judge.
Michael Warfel appeals a final judgment entered in favor of Universal Insurance Company of North America in a sinkhole insurance coverage case. Mr. Warfel is entitled to a new trial because the trial court should not have instructed the jury on an evidentiary presumption that imper-missibly shifted the burden of proof to him. Accordingly, we reverse.
In March 2005, Universal issued an all-risks homeowners’ insurance policy to Mr. Warfel. The policy covered sinkhole claims. Effective June 1, 2005, the legislature amended sections 627.706 to 627.707, Florida Statutes (2005), and enacted sections 627.7065, 627.7072, and 627.7073 relating to database information, testing standards, and reporting requirements for sinkhole claims.
In August 2005, Mr. Warfel noticed damaged walls and floors in his home. He filed a sinkhole claim with Universal. After an investigation by a geotechnical, geological and engineering firm, SD II Global, *137 Universal denied the claim, concluding that the damage was not caused by a sinkhole.[1] The SD II Global report found that the damage was caused by shrinkage, thermal stress, and differential settlement, all of which are excluded from coverage under the policy.
Mr. Warfel sued Universal. Before trial, Universal filed a motion asking the trial court to apply the above-referenced statutory provisions to the case. Universal contended that the 2005 amendments and enactments did not impair existing contract rights or obligations. Alternatively, Universal argued that any impairment was overridden by the State’s interest in resolving a sinkhole insurance claim crisis. Universal also asked the trial court to determine that section 90.304, Florida Statutes (2007), allowed a jury instruction based on section 627.7073(l)(c) as a rebut-table presumption affecting the burden of proof. Over Mr. Warfel’s objection, the trial court granted Universal’s motion as it related to the jury instruction; that ruling is the crux of this appeal.[2]
At trial several experts testified about the cause of damage to Mr. Warfel’s home. Mr. Warfel presented the testimony of a geologist, an engineer, and a structural engineer, all of whom had reviewed the SD II Global report. They concluded that a sinkhole, at least in part, caused the damage. Universal presented testimony of a structural engineer, a geotechnical engineer, and a geologist, all affiliated with SD II Global. They concluded that sinkhole activity did not damage the home.
Universal posited that section 627.7073(l)(c) required Mr. Warfel to prove that he suffered a sinkhole loss as specifically defined by statute. The 2005 version of section 627.7073(l)(c) provided as follows:
The respective findings, opinions, and recommendations of the engineer and professional geologist as to the verification or elimination of a sinkhole loss and the findings, opinions, and recommendations of the engineer as to land and building stabilization and foundation repair shall be presumed correct.[3]
Universal retained its experts under section 627.707(2) to conduct the testing required by section 627.7072 and to issue a *138 report in accordance with section 627.7073. This report bears the presumption of correctness.
Universal also contended that section 627.7073(l)(c) created a section 90.304 presumption because it implemented public policy relating to a sinkhole insurance crisis.[4] Universal reasoned that the SD II Global report findings are presumptively correct; the presumption shifted the burden of proof to Mr. Warfel. The trial court agreed and instructed the jury as follows:
You must -presume that the opinions, findings, and conclusion in the SD II report as to the cause of damage and whether or not a sinkhole loss has occurred are correct. This presumption is rebuttable. The Plaintiff has the burden of proving by a preponderance of the evidence that the findings, opinions, and conclusions of the report are not correct.
(Emphasis added.) Universal stressed this instruction during its closing argument, emphasizing that the trial court would tell the jury that it
must presume that the opinions, findings, and conclusions in the SD II report as to the cause of damage and whether or not a sinkhole loss has occurred are correct. You must presume that report is correct. That report is the only report in evidence.
You can take it back in the room. Read it. You will presume — the Judge will instruct you you must presume that’s correct.
Throughout the trial court proceedings, Mr. Warfel argued that the section 627.7073(l)(c) presumption was a “vanishing” or “bursting bubble” presumption, a presumption affecting the burden of producing evidence but not one shifting the burden of proof to him. See §§ 90.302(1),[5] 90.303.[6] Additionally, Mr. Warfel explained that the statutory scheme reflected no legislative intent to apply a public or social policy presumption so as to shift the burden of proof to the homeowner. He is correct.
We see no clear legislative expression that public policy compels a homeowner to shoulder the burden to disprove the findings and recommendations of the insurer’s engineers and geologists. We are also mindful that, historically, an all-risks policy encumbers the insurer with the burden to prove that a claimed loss is not covered. See Wallach v. Rosenberg, 527 So.2d 1386, 1388-89 (Fla. 3d DCA 1988). We must assume that the legisla *139 ture was aware of this fact when it enacted section 627.7073(l)(c). Moreover, the legislature knows how to create burden-shifting presumptions under section 90.304. See C. Ehrhardt, Florida Evidence § 304.1 (2009 ed.) (explaining presumptions that affect the burden of proof and providing examples of conclusive presumptions). For example, the legislature included a burden-shifting presumption in a statutory amendment governing burdens of proof in will contests. There, the legislature announced that a presumption of undue influence implements public policy and shifts the burden of proof after the presumption of undue influence arises in a will contest. See § 733.107(2), Fla. Stat. (2002); Hack v. Janes, 878 So.2d 440, 443-44 (Fla. 5th DCA 2004) (explaining the section 733.107(2) provision and the difference between vanishing presumptions, which merely affect the burden of production of evidence, and public policy-related presumptions that provide for shifting of the burden of proof). Other legislatively mandated public policy-related presumptions abound. See, e.g., Mallardi v. Jenne, 721 So.2d 380, 383 (Fla. 4th DCA 1998) (discussing amendment to section 61.14, Florida Statutes (1992), which adopted a presumption relating to contempt for failure to pay alimony or child support under section 90.302(2) of the evidence code “to implement the public policy of this state”); Ferguson v. Williams, 566 So.2d 9, 11 (Fla. 3d DCA 1990) (explaining that the statutory presumption of paternity under section 742.12(1), Florida Statutes (1989), is a rebuttable presumption and the legislature specifically provided that it was governed by section 90.304 of the evidence code).
In contrast, the legislature has not declared that the presumption in section 627.7073(l)(c) is a public policy-related presumption. Nor did the legislature specifically provide that section 627.7073(l)(c) was to operate as a burden-shifting presumption under sections 90.302(2) or 90.304. Absent a clear legislative directive, we must conclude that section 627.7073(l)(c) is a “vanishing” or “bursting bubble” presumption that affected only Mr. Warfel’s burden of producing evidence. See C. Ehrhardt, Florida Evidence § 303.1.[7] An explanation of this type of presumption was reiterated in International Alliance of Theatrical Stage Employees & Moving Picture Technicians, Artists & Allied Crafts of the United States, its Territories, & Canada Local 500 v. International Alliance of Theatrical Stage Employees & Moving Picture Machine Operators Holding Co., 902 So.2d 959, 963 (Fla. 4th DCA 2005) (quoting Caldwell v. Div. of Ret., 372 So.2d 438, 440 (Fla.1979)):
[W]hen credible evidence comes into the case contradicting the basic fact or facts giving rise to the presumption, the presumption vanishes and the issue is determined on the evidence just as though no presumption has ever existed. Conversely, if the basic facts are sufficiently proven so as to give rise to the presumption and not thereafter contradicted by credible evidence, the party in whose favor the presumption exists becomes *140 entitled to a directed verdict. Thus, in either event, the presumption is productive of these procedural consequences but is not a matter for the jury to consider.
The jury is not told of this presumption. See Pub. Health Trust of Dade County v. Valcin, 507 So.2d 596, 600 (Fla.1987); Murray v. Schreiner, 825 So.2d 527, 528 (Fla. 2d DCA 2002) (“ ‘When the defendant produces evidence which fairly and reasonably tends to show that the real fact is not as presumed, the impact of “the presumption is dissipated.” Whether the ultimate fact has been established must then be decided by the jury from all of the evidence before it without the aid of the presumption.’” (quoting Gulle v. Boggs, 174 So.2d 26, 28-29 (Fla.1965))); Aetna Cas. & Sur. Co. v. Pappagallo Rest., Inc., 547 So.2d 243, 244 (Fla. 3d DCA 1989) (explaining that when adverse party introduces credible evidence to disprove a presumed fact, the presumption vanishes and the jury is never told of it); Nationwide Mut. Ins. Co. v. Griffin, 222 So.2d 754, 756 (Fla. 4th DCA 1969) (“A presumption is a rule of law which attaches to certain evi-dentiary facts and is productive of certain procedural consequences. The presumption is not itself evidence and has no probative value.”).
Because the trial court misapplied the presumption at work in this case and gave the jury an instruction improperly shifting the burden of proof, a new trial is required.
Reversed and remanded.
However, because our ruling may affect insurance claims for sinkhole losses throughout Florida, we certify the following question to the supreme court as one of great public importance:
DOES THE LANGUAGE OF SECTION 627.7073(1)(C) CREATE A PRESUMPTION AFFECTING THE BURDEN OF PROOF UNDER SECTION 90.304 OR DOES THE LANGUAGE CREATE A PRESUMPTION AFFECTING THE BURDEN OF PRODUCING EVIDENCE UNDER SECTION 90.303.
WALLACE, J., Concurs.
VILLANTI, J., Dissents with opinion.

. Universal was required to retain these experts. Section 627.707 provides, in part, as follows:
Upon receipt of a claim for a sinkhole loss, an insurer must meet the following standards in investigating a claim:
(1) The insurer must make an inspection of the insured's premises to determine if there has been physical damage to the structure which may be the result of sinkhole activity.
(2) Following the insurer's initial inspection, the insurer shall engage an engineer or a professional geologist to conduct testing as provided in s. 627.7072 to determine the cause of the loss within a reasonable professional probability and issue a report as provided in s. 627.7073, if:
(a) The insurer is unable to identify a valid cause of the damage or discovers damage to the structure which is consistent with sinkhole loss; or
(b) The policyholder demands testing in accordance with this section or s. 627.7072.

. The trial court denied Universal’s motion as to sections 627.706 to 627.707, finding that these amendments were substantive and not applicable retroactively. The trial court granted Universal’s motion as to the three new enactments, sections 627.7065, 627.7072, and 627.7073, relating to sinkhole database, testing, and reporting requirements, reasoning that the statutes were procedural and did not involve an issue of retroactivity. Although Mr. Warfel takes issue with the latter ruling, we find no error and discuss the matter no further.

. The legislature made minor changes to section 627.7073(l)(c) in 2006, none of which are relevant here.

. 90.304 Presumption affecting the burden of proof defined. — In civil actions, all rebuttable presumptions which are not defined in s. 90.303 are presumptions affecting the burden of proof.

. 90.302 Classification of rebuttable presumptions. Every rebuttable presumption is either:
(1) A presumption affecting the burden of producing evidence and requiring the trier of fact to assume the existence of the presumed fact, unless credible evidence sufficient to sustain a finding of the nonexistence of the presumed fact is introduced, in which event, the existence or nonexistence of the presumed fact shall be determined from the evidence without regard to the presumption; or
(2) A presumption affecting the burden of proof that imposes upon the party against whom it operates the burden of proof concerning the nonexistence of the presumed fact.

. 90.303 Presumption affecting the burden of producing evidence defined. — In a civil action or proceeding, unless otherwise provided by statute, a presumption established primarily to facilitate the determination of the particular action in which the presumption is applied, rather than to implement public policy, is a presumption affecting the burden of producing evidence.

. We recognize the legislature’s desire to stem the tide of sinkhole-related insurance claims. Unquestionably, certain provisions of the statutes described earlier in this opinion reflect a concern with identifying and advising homeowners and others of potential sinkhole-prone areas. See §§ 627.7065, 627.7072, 627.7073. For example, the reporting and recording provisions of sections 627.7065 and 627.7073 promote public awareness. But we are hesitant to conclude that this concern with enhancing public information, absent clear legislative direction, extends to the micromanagement of trial proceedings between private parties.